IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston Division

**ALISHA WILKES,**
**individually and on behalf of all**
**others similarly situated,**

      **Plaintiffs,**

    v.                                                                        Civil Action No. 2:12-1353

**QUICKEN LOANS, INC.,**

      **Defendant.**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR JUDGMENT ON THE PLEADNIGS

Defendant Quicken Loans, Inc. ("Defendant" or "Quicken Loans"), by counsel, pursuant to Fed. R. Civ. P. 12(c), submits this Memorandum in Support of its Motion for Judgment on the Pleadings in response to Plaintiff Alisha Wilkes's ("Plaintiff") Class Action Complaint. For the reasons set forth below, Plaintiff's Complaint should be dismissed in its entirety.

### I.    INTRODUCTION

Plaintiff filed her Class Action Complaint on May 1, 2012, alleging that Quicken Loans failed to provide Plaintiff with a credit score disclosure as soon as reasonably practicable after obtaining her score in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681g(g). (Comp. ¶ 1). Plaintiff seeks actual, statutory, and punitive damages, and attorneys' fees and costs for herself and purported class members for Quicken Loans' alleged technical violation of the FCRA. (*Id.*). However, Plaintiff failed to plead all of the elements to state a cause of action under § 1681g(g), thus her Complaint fails as a matter of law and must be dismissed. Specifically, Plaintiff failed to plead that Quicken Loans did not provide her credit score disclosure "as soon as reasonably practicable" after *using* the score in accordance with the

plain and unambiguous statutory text of § 1681g(g). *See* 15 U.S.C. § 1681g(g) ("Any person who makes or arranges loans **and who uses a consumer credit score**…shall provide the following [score disclosure] to the consumer as soon as reasonable practicable") (emphasis added). Instead, Plaintiff asserts that Quicken Loans did not provide her credit score disclosure "as soon as reasonably practicable" after "obtaining" the score. (*Id*. ¶¶ 1, 11-12, 14, 26). Notably, the term "use" does not appear in Plaintiff's Complaint. Further, substantively, Plaintiff's Complaint is completely devoid of any factual allegations that Quicken Loans used her credit report or credit score in any manner. For example, Plaintiff does not plead that the score disclosure was not sent as soon as reasonably practicable after Quicken Loans made a credit decision based on the score.

While neither "use" nor "obtain" is defined by the FCRA, these terms are not synonymous in accordance with well-settled cannons of statutory construction.[1] To the contrary, the plain meanings of "use" and "obtain" vary significantly and the legislature employed these terms separately and independently within the FCRA. In the context of § 1681g(g), "obtaining" a consumer's credit report necessarily occurs before the lender "uses" that report or the information contained therein in any manner. Section 1681g(g) only applies to a lender who "uses" a consumer credit score, thus Plaintiff failed to plead a condition precedent to establishing liability under § 1681g(g) and her Complaint must be dismissed.

---

[1] "Use" is the trigger point, requiring the lender to provide the score disclosure "as soon as reasonably practicable" in accordance with the plain and unambiguous language of the FCRA. 15 U.S.C. § 1681g(g). Thus, the distinction between "use" and "obtain" is significant in determining liability because "use" occurs at different phases of the application process depending on the underlying facts and circumstances of the particular consumer.

2

## II.     ALLEGED FACTS[2]

Plaintiff applied for a mortgage loan with Quicken Loans in May 2010. (Comp. ¶ 6). As part of its standard application process, Quicken Loans obtained one or more consumer credit reports regarding Plaintiff from consumer reporting agencies to evaluate her for a consumer loan. (*Id*. ¶¶ 7-8).   In connection with Plaintiff's credit reports, Quicken Loans also obtained Plaintiff's consumer credit score on or about May 3, 2012.  (*Id*. ¶¶ 9-10).  Quicken Loans provided Plaintiff with a credit score disclosure dated May 24, 2010, pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681g(g).

## III.     LEGAL STANDARD

It is well-settled that a Rule 12(c) motion for judgment on the pleadings "is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank v. Nat'l Trust Co. v. IRS*, No. 08-2259, 2010 U.S. App. LEXIS 872, *5 (4th Cir. 2010) (granting defendant's motion for judgment on the pleadings); *Demetry v. Lasko Prods*., 284 Fed. Appx. 14, 15 (4th Cir. 2008) (same).  To survive dismissal for failure to state a claim, the "complaint's 'factual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'"  *Demetry*, 284 Fed. Appx. at 15  (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)).  Further, the plaintiff must "allege facts sufficient to state all the elements of her claim." *Bass v. E.I.DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure, and only allegations of fact are entitled to the presumption of

---

[2] The "Alleged Facts" section is based upon the allegations contained in the Complaint. Although Defendant disagrees with Plaintiff's claims, for the limited purpose of this motion, the sparse factual allegations contained in the Complaint are taken as true.

3

truth. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Therefore, a claim is "facially plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*., 129 S. Ct. at 1949. At the very least, a plaintiff must plead sufficient facts that, if proven true, would establish the necessary elements of a cause of action. *See Patel v. Scotland Memorial Hospital, a North Carolina Corporation*, No. 95-2704, 1996 U.S. App. LEXIS 16421 *7 (4th Cir. July 10, 1996) (affirming dismissal of plaintiff's complaint where he failed to adequately allege two elements of his claim). Applying the above standard, it is clear that Plaintiff's Complaint fails to state a claim under 15 U.S.C. § 1681g(g) as a matter law based on the plain language of the statutory text.

## IV. ARGUMENT

### A. Plaintiff Failed to Plead the Elements to State a Claim under § 1681g(g) of the FCRA.

The factual basis for Plaintiff's Complaint is that Quicken Loans allegedly did not provide her credit score disclosure as soon as reasonably practicable after "obtaining" her score in violation of § 1681g(g) of the FCRA. (Comp. ¶¶ 1, 11-12, 14, 26). Plaintiff filed the instant lawsuit on behalf of herself and a purported class of consumers who allegedly were not provided with their credit score disclosure within three (3) business days after Quicken Loans **obtained** the credit score. (*Id*. ¶ 14). Even assuming that Plaintiff's factual allegations are true for purposes of this motion (which Quicken Loans denies), Plaintiff's Complaint fails to state a plausible claim for relief and must be dismissed because Plaintiff did not plead all of the elements of a claim under § 1681g(g).

4

### 1.     "Use" is the Triggering Event to Establish Liability under § 1681g(g) based on the Plain Meaning of the Statutory Text.

Pursuant to § 1681g(g) of the FCRA, a lender who "**uses**" a consumer credit score, must provide the consumer with a credit score disclosure "as soon as reasonably practicable."  15 U.S.C. § 1681g(g) (emphasis added).  A plain reading of the statute indicates that the triggering event to provide the score disclosure – and a prerequisite to establishing liability – is the lender's "use" of the score, rather than when the lender "obtains" the score.  *See* 15 U.S.C. § 1681g(g)(1) (applying to "Any person who makes or arranged loans and who uses a consumer credit score").

While neither "use," nor "obtain" is defined by the FCRA, these terms are not synonymous in accordance with well-settled cannons of statutory construction.  *See Nat'l Automobile Dealers Ass'n v. FTC*, No, 11-1711, 2012 U.S. Dist. LEXIS 70831 *19 (D.D.C. May 22, 2012) (concluding "use" and "obtain" are not synonymous under the FCRA).  In interpreting statutory text, the courts first consider the plain meaning of the statutory language.  *See Engine Mfrs. Ass'n v. S.Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004); *Ohio Valley Environmental Coalition, Inc. v. Independence Coal Co.*, 775 F. Supp. 2d 900, 923 (S.D. W.Va. 2011).  "Thus, '[t]he word 'use' in the statute must be given its 'ordinary or natural' meaning, a meaning variously defined as 'to convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'"  *Nat'l Automobile Dealers Ass'n*, 2012 U.S. Dist. LEXIS 70831 at *17 (quoting *Bailey v. U.S.*, 516 U.S. 137, 145 (1995)); *see Oxford Dictionaries Pro* (2012) (defining "use" as "take, hold, or deploy [something] as a means of accomplishing a purpose or achieving a result' employ").  In considering the term "use" within a different statute, the Supreme Court concluded that "'[t]hese various definitions of 'use' imply action and implementation.'"  *Id*. at 18 (quoting *Bailey*, 516 U.S. at 145).  Thus, "use" of the credit score includes action taken by the lender based on or because of the consumer's credit score.  *See id*.

By contrast, "obtain" is defined as "to gain" or "attain," thus obtaining a credit report for purposes of the FCRA means that the lender has pulled or otherwise acquired physical possession of the report. *See Obtain Definition*, MERRIAM-WEBSTER ONLINE DICTIONARY AND THESAURUS, http://www.merriam-webster.com/dictionary/obtain (last visited July 30, 2012). Thus, in the context of § 1681g(g), the lender always "obtains" the consumer's credit report and score before the lender "uses" the score in any manner.

Further, § 1681g(g) provides the suggested text of the score disclosure, the "Notice to the Home Loan Applicant" (the "Notice"), which includes:

> In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users **and the lender used in connection with your home loan**, and the key factors affecting your credit scores. "The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. **Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage.** Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

15 U.S.C. § 1681g(g) (emphasis added). Notably, the Notice does not state that the lender must disclose the score after "obtaining" the consumer's credit report. *Id*. Instead, the plain language of the requisite Notice states that it is being provided to the consumer after the lender "used" the score in connection with the consumer's home loan. *Id*. The Notice also explains the manner in which the lender may use the consumer's credit score, namely in determining whether the consumer qualifies for a loan or in setting the terms of credit. *Id*. Thus, based on the plain meaning of the statutory text, the lender's "use" of the consumer's credit score triggers the score disclosure requirement (i.e. the lender must provide the disclosure "as soon as reasonably

6

practicable" after "use"), rather than the point in time that the lender obtains the consumer's credit report.

### 2. Congress' Choice of "Use," rather than "Obtain," is Dispositive because it Employed Both Terms Independently within the FCRA.

In statutory interpretation, it is well-established that Congress intends to employ the terms contained within the statutory text and all terms should be given meaning. *See TRW Inc.* v. *Andrews*, 534 U.S. 19, 31 (2001) (noting canon that statutes should be read to avoid making any provision "superfluous, void, or insignificant"). In § 1681g(g), Congress employed the term "use," rather than "obtain," thus Congress intended "use" of the consumer's credit score to trigger the score disclosure requirement, rather than pulling the credit report. *See Domonoske v. Bank of Am., N.A.*, No. 5:08-cv-66, *Report and Recommendation* at 15 (W.D. W.Va. Jan. 27, 2010) (ECF No. 89) (finding "The issue in this case is whether the Bank's method for notifying consumers that it had requested, obtained, **and** used a credit score from a credit reporting agency was 'as soon as reasonably practicable.'") (emphasis added).

Indeed, Congress employed both terms, "use" and "obtain," elsewhere in the FCRA. *See, e.g.,* 15 U.S.C. § 1681m(e)(4) (defining creditor as one who "obtains or uses" consumer reports); 15 U.S.C. § 1681b (providing an exception for an agency of the U.S. government that seeks to "obtain and use" a consumer report); 15 U.S.C. § 1681d (regulating reports that contain information, which a credit reporting agency has "obtained" from a neighbor, friend, etc., of the consumer); 12 C.F.R. Parts 222 (2011) (noting that the Dodd-Frank Act requires creditors to disclose credit scores *used* in making credit decisions with risk-based pricing). Thus, the plain language of the FCRA distinguishes between "using" a credit score and "obtaining" a credit score. *See Nat'l Automobile Dealers Ass'n*, 2012 U.S. Dist. LEXIS 70831 at *18-19 (noting that

7

the FCRA's use of the terms 'obtain,' 'procure,' and 'furnish' demonstrates that Congress used more precise terms when referring to physical possession of the consumer report).

Finally, "use" as the trigger point is consistent with the stated purpose of the statute to require full disclosure of the terms and conditions in credit transactions or in offers to extend credit. *See* 15 U.S.C. § 1681a(d)(1) (in general, the FCRA applies to situations where a person collects information on a consumer's credit worthiness and the information is used by a third party as a factor in establishing eligibility for credit or insurance); 90 P.L. 321 (1968) (Section 1681g was enacted to "safeguard the consumer in connection with the utilization of credit by requiring full disclosure of the terms and conditions of finance charges in credit transactions or in offers to extend credit…" ); *see also Charleston Area Med. Ctr., Inc. v. State Tax Dep't of W.Va.*, 224 W.Va. 594, 597 (2009) (finding it is "well-established" that a "statute should be so read and applied as to make it accord with the spirit, purposes and objects" of that statute). For example, if the lender obtains or pulls the consumer's credit report, but the consumer withdraws the credit application before the score is used in any manner by the lender, then there is no requirement to provide the score disclosure because there is no credit decision to explain to the consumer.

Here, the term "use" is completely devoid from Plaintiff's Complaint and there are no facts alleged suggesting that Quicken Loans did not provide the credit score disclosure as soon as reasonably practicable after using the score in accordance with § 1681g(g) of the FCRA. Thus, Plaintiff's claim for alleged violations of § 1681g(g) fails in both form and substance. Quicken Loans' conduct in providing the score disclosure three (3) weeks after allegedly obtaining the score report is not in and of itself unlawful based on the plain and unambiguous language of the FCRA. Accordingly, Plaintiff's Complaint is not facially plausible to survive Rule 12 dismissal

because she failed to plead the elements to state a claim under § 1681g(g) and failed to plead a condition precedent to establishing liability. Thus, Plaintiff's Complaint should be dismissed in its entirety.

## V. CONCLUSION

For all the reasons discussed above, Quicken Loans, Inc. respectfully requests that the Court grant its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) and enter an order dismissing Plaintiff's Complaint in its entirety and granting Quicken Loans any further legal or equitable relief as the Court deems appropriate.

Dated: August 2, 2012

Respectfully Submitted,

**QUICKEN LOANS, INC.**

By:   /s/ John C. Lynch
          Of Counsel

John C. Lynch (WVSB No. 6627)
Jason E. Manning (WVSB No. 11277)
Counsel for Quicken Loans, Inc.
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of August, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiff**
John W. Barrett
Jonathan R. Marshall
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.copm

Matthew J. Erausquin
Consumer Litigation Associates, P.C.
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
matt@clalegal.com

Leonard A. Bennett
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA 22601
lenbennett@clalegal.com

John C. Bazaz
Law Offices of John C. Bazaz, PLC
4000 Legato Rd., Suite 1100
Fairfax, VA 22033
jbazaz@bazazlaw.com

/s/ John C. Lynch
John C. Lynch (WVSB No. 6627)
*Counsel for Defendant*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com