**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**Charleston Division**

**ALISHA KINGERY,**
**f/k/a ALISHA WILKES,**
**individually and on behalf of all**
**others similarly situated,**

       **Plaintiffs,**

    **v.**                                    **Civil Action No. 2:12-cv-1353**

**QUICKEN LOANS, INC.,**

       **Defendant.**

**QUICKEN LOANS, INC'S MEMORANDUM IN SUPPORT OF**
**MOTION TO QUASH SUBPOENA AND/OR FOR A PROTECTIVE ORDER**

Defendant Quicken Loans, Inc. ("Quicken Loans"), by counsel, pursuant to Rules 45(c) and 26(c) of the Federal Rules of Civil Procedure, respectfully moves this Court to quash Requests one, two and five of Alisha Kingery's ("Plaintiff") subpoena *duces tecum* to TransUnion, LLC ("TransUnion"). In the alternative, Quicken Loans respectfully requests the Court issue an appropriate protective order restricting the requests in the subpoena to requests three and four. For the reasons below, Quicken Loans requests the Court grant its motion.

**BACKGROUND**

On May 1, 2012, Plaintiff brought a single count complaint against Quicken Loans in which she alleged Quicken Loans violated section 1681g(g) of the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. § 1681g(g). Plaintiff subsequently amended this complaint on two separate occasions, leaving the Second Amended Class Action Complaint ("Amended Complaint) as the operative complaint in this litigation. (ECF 23). Plaintiff brings the Amended Complaint on behalf of herself and those she alleges to be similarly situated.

In Plaintiff's lone count, she alleges that "Quicken violated the Fair Credit Reporting Act, 15 U.S.C. § 1681g(g), by its actions, which include, but are not necessarily limited to, failure to provide the mandated disclosures to Ms. Kingery and the putative class members as soon as reasonably practicable following such time as it obtained and used a credit score regarding that individual in connection with a mortgage loan application." (Am. Compl. ¶ 42).[1] Ms. Kingery purports to bring this one claim on behalf of "[a]ll natural persons residing in the United States who were the subject of at least one consumer credit score obtained and used by Quicken between May 1, 2010 through May 1, 2012…and to whom the credit score disclosure notice was not provided to that person within 3 business days after Quicken obtained the credit score." (Am. Compl. ¶ 30).

On or about July 9, 2013, Plaintiff issued three substantially similar subpoenas *duces tecum* to non-parties Equifax Information Services, LLC, Experian Information Solutions, Inc., and TransUnion. (ECF 80-82). These three subpoenas contain five identical document requests. Quicken Loans' present motion focuses only on requests one, two, and five. These requests, reproduced *verbatim* below, seek the following:

1. Any and all consumer reports that contained a credit score provided by you to Quicken Loans from May 1, 2007 through May 1, 2012 (In lieu of producing such documents, you may produce a written stipulation that contains the consumers' names, addresses, telephone numbers, social security numbers, credit scores, and the date and time that you provided Quicken Loans with a consumer report that contained a credit score.)[2] ("First Request");

---

[1] According to section 1681g(g), "[a]ny person who makes or arranges loans and who uses a consumer credit score…in connection with an application initiated or sought by a consumer…shall provide the following to the consumer as soon as reasonably practicable." 15 U.S.C. § 1681g(g). The section then lists several pieces of information that must be provided when section 1681g(g) is triggered.

[2] The rules of discovery do "not give a plaintiff the right to require a defendant to create documents for the plaintiff's use during litigation." *Capers v. Durham County Sheriff Dep't*, No. 1:07CV825, 2009 U.S. Dist. LEXIS 23063, at *11 (M.D.N.C. Mar. 23, 2009)

2. Any and all billing statements for consumer reports that contained a credit score provided by you to Quicken Loans from May 1, 2007 through May 1, 2012. ("Second Request")

5. Any and all contracts between you and Quicken Loans.  ("Fifth Request").

The requests above are dramatically overreaching.  The First Request for example, requests TransUnion provide Plaintiff with thousands of credit reports, credit scores, addresses, and social security numbers pertaining to individuals who are complete strangers to this litigation.  Not only are these consumer reports irrelevant to the merits of the parties' claims and defenses, they seek highly private and confidential information on individuals who are not currently class members, may never be class members, and even if they could conceivably be class members, may have no interest in the production of such confidential information.  Moreover, the First Request seeks information that the FCRA prohibits consumer reporting agencies from producing in response to an attorney-issued subpoena.

In addition, Plaintiff's subpoena runs afoul of the procedural requirements of Rule 45 of the Federal Rules of Civil Procedure.  Under Rule 45, a subpoena for documents on a nonparty must be served out of the district where the documents are located.  Plaintiff served her subpoena on TransUnion out of the Southern District of West Virginia.  But the documents she seeks, to the extent they exist, are likely not located in that district.

For these reasons, among many others, the document requests in the subpoena *duces tecum* to TransUnion are impermissible.  Quicken Loans respectfully requests the Court quash requests one, two and five in Plaintiff's subpoena *duces tecum* to TransUnion or, in the alternative, issue a protective order limiting the subpoena *duces tecum* to requests three and four.

## LEGAL STANDARD

Rule 45(c) of the Federal Rules of Civil Procedure provides a number of grounds upon which a party can move to quash a subpoena.  *See* Fed. R. Civ. P. 45(c)(3)(A).  Under that

provision, the Court must quash a subpoena if, among other things, the subpoena seeks the disclosure of privileged or protected material or places an undue burden on the party to whom the subpoena is directed.  *Id.*  Moreover, the Court may quash a subpoena if the subpoena requires the disclosure or a trade secret or other confidential research, development or commercial information.  *See* Fed. R. Civ. P. 45(c)(3)(B)(i).

Importantly, although Federal Rule of Civil Procedure 45 list several enumerated grounds for quashing a subpoena, a party may move to quash a subpoena if it seeks information impermissible under either Rule 45 or Rule 26 of the Federal Rules of Civil Procedure.  *See Cook v. Howard,* 484 F. App'x. 805, 812 (4th Cir. 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed, taking into consideration facts peculiar to their status as a non-party, those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26."); *Singletary v. Sterling Transp. Co.,* 289 F.R.D. 237, 240-241 (E.D. Va. Nov. 7, 2012) ("Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26….Thus, regardless of whether the Court considers Plaintiffs Motion under Rule 45 or Rule 26, the Court must review Defendant's subpoenas under the relevancy standards set forth in Rule 26(b)") (citations omitted); *Nickerson v. State Farm Ins. Co.*, No. 5:10CV105, 2011 U.S. Dist. LEXIS 124762, at *5-7 (N.D. W.Va. Oct. 22, 2011) (holding that the limitations of discovery under Rule 26 apply to subpoenas under Rule 45).

Under Rule 26(b), a party may only obtain discovery regarding information that is relevant to a party's claim or defense, which is reasonably calculated to lead to the discovery of admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).  Because requests one, two, and five run afoul

of the discovery limitations in Rules 26 and 45 of the Federal Rules of Civil Procedure, the Court should quash these requests. In the alternative, the Court should issue a protective order limiting the subpoena *duces tecum* to requests three and four.

1.  **The First Request Seeks Information Not Permitted under the Federal Rules and the FCRA**

In Plaintiff's First Request to TransUnion, she seeks "[a]ny and all consumer reports that contained a credit score provided by [TransUnion] to Quicken Loans from May 1, 2007 through May 1, 2012." The Court should quash this request or issue an appropriate protective order striking the request because the request: (1) seeks the production of information in a manner that violates the FCRA; (2) seeks irrelevant information; (3) impermissibly seeks private identifying information of alleged class members prior to class certification; and (4) is overbroad.

a.  Plaintiff's First Request seeks information, the production of which would violate the FCRA

Under the FCRA, a consumer reporting agency like TransUnion may only furnish a consumer report in certain limited circumstances for certain permissible purposes, "and no other." *See* 15 U.S.C. § 1681b(a). These permissible purposes include, among others: (1) in response to certain court orders; (2) in response to a subpoena issued in connection with proceedings before a federal grand jury; and (3) in accordance with the written instructions of the consumer to whom it relates. *Id.*

Consumer reporting agencies are not permitted under the FCRA to provide consumer reports to a plaintiff in response to a civil subpoena issued by that plaintiff's counsel. *See* Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act*, 42 (July 2011), http://www.ftc.gov/os/2011/07/110720fcrareport.pdf ("A subpoena is not an 'order of a court' unless it is signed by a judge. Thus, administrative subpoenas, attorney-issued subpoenas, and similar formal process issued by entities other than a federal grand jury, do not provide a

permissible purpose under this section."). Such a request is not a permissible purpose under the FCRA. Yet, this is precisely how Plaintiff seeks to obtain thousands of private and highly confidential consumer reports in this litigation. Because the FCRA does not allow the production of consumer reports in this circumstance, the Court should grant Quicken Loans' motion.

       b.   <u>Plaintiff's First Request seeks irrelevant information</u>

Under the Federal Rules of Civil Procedure, the scope of discovery is limited to information that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff's Amended Complaint is limited to one claim. In this claim, she alleges that Quicken Loans failed to provide Plaintiff and alleged putative class members with a notice under section 1681g(g) of the FCRA "as soon as reasonably practicable following such time as it obtained and used a credit score regarding that individual in connection with a mortgage loan application." (Am. Compl. ¶ 42).

To prove her claim as pled, Plaintiff must necessarily show that more than a reasonably practicable amount of time elapsed between the time Quicken Loans allegedly *used* her credit score and the time it sent her the disclosure under section 1681g(g). If a class were certified, Plaintiff would have to prove at trial, among other things, that a greater than reasonably practicable time period elapsed between the *use* of a credit score and the mailing of a credit score disclosure for the members of the purported class. Plaintiff's First Request, however, is divorced from the issues Plaintiff must confront at trial.

In this request, Plaintiff seeks all consumer reports containing a credit score that TransUnion provided to Quicken Loans between May 1, 2007 and May 1, 2012. While these consumer reports will certainly contain various pieces of information, they will say nothing of the date that Quicken Loans allegedly used the report in a manner sufficient to trigger section

1681g(g).  Nor will these reports reveal information as to the date that Quicken Loans sent the individuals (when required) on whom the report pertains the disclosures under section 1681g(g) of the FCRA.    Moreover, the content of the reports will provide no insight as to whether Quicken Loans actually *used* the report.  In fact, the consumer reports will yield no information pertaining to the timing of Quicken Loans' section 1681g(g) notices or whether Quicken Loans used the credit scores at issue.[3]  As pled, each piece of information discussed above is crucial to the evaluation of Plaintiff's claim.  (*See* Am. Compl. ¶ 42).    Because the First Request has no bearing on the parties' claims or defenses, the Court should quash the request.

Courts frequently grant motions to quash third-party subpoenas that seek information irrelevant to the claims at issue.  *See, e.g.*, *Sharp v. Balt. City Police Dep't,* No. CCB-11-2888, 2013 U.S. Dist. LEXIS 58111, at *4-11 (D. Md. Mar. 1, 2013) (granting a motion for a protective order and denying numerous requests in a third-party subpoena as irrelevant*); E.I. du Pont de Nemours & Co. v. Macdermid Printing Solutions, L.L.C.*, No. 1:10MC39, 2012 U.S. Dist. LEXIS 29262, at *12 (M.D.N.C. Mar. 6, 2012) ("Accordingly, as the record lacks any evidence regarding the relevancy of or DuPont's need for the documents, DuPont's subpoena will be quashed in this respect."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) ("The Court upholds Magistrate Judge Poretz's Order, quashing State Farm's subpoena, because the subpoena is overbroad to the extent that it does not limit the documents requested to subject matter relevant to the claims or defenses in *McIntosh* and imposes an undue burden on the Rigsbys.").

---

[3]  The credit report pertaining to Plaintiff that she has produced in discovery, for example, includes no information regarding the issues above.  The report includes a "[r]equested" date, but provides no information as to when Quicken Loans allegedly used the report or whether the report was used at all.

Because Plaintiff's First Request seeks information that is irrelevant to the claims at issue, the Court should quash the request.  In the alternative, the Court should issue a protective order eliminating the First Request from the subpoena *duces tecum*.

c.   The First Request impermissibly seeks discovery of private information corresponding to purported class members prior to class certification

Plaintiff's First Request seeks information that is irrelevant to the claim at issue and is, therefore, not within the scope of discovery under the Federal Rules.  The Court should also quash the subpoena or issue an appropriate protective order, however, because the subpoena impermissibly seeks private identifying information on purported class members prior to class certification.  Numerous courts have denied similar discovery requests for varying reasons. These reasons include: (1) a concern that plaintiffs often seek class information for impermissible client and/or purported class member recruitment; (2) a lack of relevance; and (3) a concern for the legitimate privacy rights of third parties;

i.   Impermissible client development

"Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006 U.S. Dist. LEXIS 33011, at *3 (E.D.N.Y. May 23, 2006) (citations omitted).  *See also Jenkins v. TJX Cos.*, No. CV 10-3753, 2011 U.S. Dist. LEXIS 44372, at *7-9 (E.D.N.Y. Apr. 25, 2011) (balancing the plaintiff's argument that class member information was needed for class certification purposes with the impermissibility of seeking such information simply to obtain new class members, and denying the requested discovery); *Charles v. Nationwide Mut. Ins. Co.*, No. 09 CV 94, 2010 U.S. Dist. LEXIS 143487, at *23 (E.D.N.Y. May 27, 2010) (denying discovery of purported class member

information when it was unclear whether the information was sought for legitimate class certification purposes or to identify new clients).

The scope of Plaintiff's First Request makes clear that a primary, if not the sole, reason behind the request is the recruitment of potential new clients and/or new class representatives. As discussed above, the information that the request seeks is irrelevant to the parties' claims and defenses. The consumer reports Plaintiff seeks reveal nothing about the time period between Quicken Loans' use of the credit score contained in that report and Quicken Loans' mailing of the section 1681g(g) disclosure. Nor do the consumer reports reveal anything regarding whether Quicken Loans used the credit scores at issue.

Given this irrelevance, and the fact that Plaintiff seeks a substantial amount of *contact information* unrelated to the merits of her claims (i.e. addresses, telephone numbers, social security numbers), the primary motivation behind the request is likely Plaintiff's desire to obtain new potential class representatives. Consistent with the authority above, this is impermissible under the Federal Rules of Civil Procedure. The Court should quash the request or, in the alternative, issue a protective order eliminating the First Request from the subpoena *duces tecum*.

      ii.    <u>Irrelevance</u>

Courts also often deny a plaintiff's request for the production of identifying information of purported class members on the ground that such information is irrelevant in the pre-certification stage of a class action lawsuit. Plaintiff's First Request necessitates the same outcome.

As discussed above, the consumer reports Plaintiff requests reveal no information as to: (1) whether Quicken Loans used the purported class member's consumer report; (2) the date Quicken Loans allegedly used the consumer report; or (3) the date Quicken Loans mailed the

individual to whom the report applies the notice under section 1681g(g).  Thus, the reports have no bearing on the merits of the case.

Moreover, the reports provide no insight into class certification issues.  Because the reports do not include information relevant to merits of the issues that Plaintiff must prove at trial (i.e. timing of notices, use of reports, etc), they also do not speak to commonality of the class members with respect to the merits of the case or whether common issues predominate the litigation.  Additionally, because the reports do not shed light on whether the timing of Plaintiff's section 1681g(g) notice was similar to the timing of notices related to other purported class members, the reports bear no relationship to whether Plaintiff would be a typical class representative.  Thus, the request seeks irrelevant information and is outside the permissible scope of discovery.

Case law makes this apparent.  In *Bird Hotel Corp. v. Super 8 Motels, Inc.*, No. 06-4073, 2007 U.S. Dist. LEXIS 7513, at *2-3 (D.S.C. Feb. 1, 2007), for example, the plaintiff brought a class action for a breach of a franchise agreement and sought in discovery each purported class member's name, address, contract information and various details about the purported class member's potential claim.  The defendant objected to the request on various grounds, including overbreadth, irrelevance, and prematurity.  While the plaintiff made numerous arguments as to why the information requested was relevant to the breach of contract claims, the court denied the motion to compel such discovery.  *Id.* at *11.  With respect to the identification of franchisee (purported class member) information, the court held "[t]he name, current address, current telephone number, franchise address, and franchise telephone number for each franchisee that has ever operated under the same or essentially similar franchise agreement is not helpful or

necessary to establish or decide certification of the class." *Id.* at \*10.  Thus, the court did not require the production of that information.

Similarly, in *Robbins v. NCO Fin. Sys.*, No. 2:06 cv 116, 2006 U.S. Dist. LEXIS 89962, at \*2 (N.D. Ind. Dec. 12, 2006), the plaintiff brought a class action under a federal consumer protection statute, the Fair Debt Collection Practices Act.  In the pre-certification stage of discovery, the plaintiff requested the name and address of all individuals sent a letter upon which some of the claims were based (i.e. purported class members). *Id.* at \*5.  The plaintiff also sought the "'complete file'" on those individuals. *Id.* at 5-6.  The defendant resisted these requests and the court denied the plaintiff's motion to compel.  Analyzing the issue on relevancy grounds, the court held that the defendant "properly resists [the plaintiff's] request for the names, addresses, and 'complete file, including computer information,' of each putative class member." *Id.* at \*14.  While the court held that such information might be relevant to the numerosity[4] inquiry on class certification, it was not relevant for any other reason at the pre-certification stage. *Id.* at \*14-15.

The holdings discussed above are not isolated.  Numerous courts have reached the same conclusions. *See Charles v. Nationwide Mut. Ins. Co.*, No. 09 CV 94, 2010 U.S. Dist. LEXIS 143487, at \*15-24 (E.D.N.Y. May 27, 2010) (denying a plaintiff's request for name and contact information of purported class members, despite the plaintiff's arguments that those issues were relevant to typicality and commonality, because plaintiff did not show a legitimate need for the information or that class certification-related information could not be obtained through other means); *Walker v. Alta Colleges, Inc.*, No. A-09-CV-894-LY, 2010 U.S. Dist. LEXIS 67153, at

---

[4] Quicken Loans has already stipulated to Plaintiff's counsel that it will not seek to defeat class certification on the ground that the numerosity element of Rule 23 is not satisfied in the present case.

*25-26 (W.D. Tex. July 6, 2010) (denying a request "seeking personal information on putative class members, including names, contact information, identification numbers, detailed information about each [purported class member's] financial aid, and other personally identifiable financial information" because such information was irrelevant pre-certification).

Because a request for the consumer reports and contact information of purported class members is irrelevant and impermissible pre-certification, the Court should quash the request. In the alternative, the Court should issue a protective order eliminating the First Request from the subpoena *duces tecum*.

iii.   <u>Privacy</u>

Courts throughout the country have also recognized that third-parties to litigation who may be class members in the future have a legitimate interest in their private information not being disseminated in discovery pre-certification. *Tech v. United States*, 284 F.R.D. 192 (M.D. Pa. 2012) provides an example of these concerns in practice and involves a situation analogous to the present case. In *Tech*, the plaintiff brought a class action against the United States on behalf of a subset of taxpayers whom the United States allegedly failed to notify about a tax refund related to telecommunications. *Id.* at 194. During the course of discovery, the plaintiff subpoenaed the records of four major telephone carriers (non-parties) for the personal information of customers who might ultimately become class members. *Id.* In these subpoenas, the plaintiff requested information on customers that included names, addresses, telephone numbers, social security numbers, account numbers, billing records, and other personal information. *Id.* at 199. The court denied the request on privacy grounds, among others.

In the court's analysis, it concluded that the request implicated "serious privacy concerns" of the potential class members that counseled against allowing the disclosure. *Id.* at 201. These privacy concerns were amplified by the fact that, alone, the requested discovery

12

would be of little utility in obtaining class certification. *Id.* That is because the information obtained from the telecommunications companies would have to be "'cross checked'" with other records before it might become useful. *Id.* In light of the substantial privacy concerns that the discovery request raised, in conjunction with the limited utility of the information sought, the court declined to allow the requested discovery.

The facts of *Tech* are highly analogous to the present case. As in *Tech*, Plaintiff seeks highly confidential information regarding purported class members. In fact, social security numbers, credit scores, and other personal information that appears on credit reports such as account histories and balances are likely some of the *most personal* information that could be sought on a potential class member. Additionally, the information Plaintiff seeks would independently have no utility for class certification purposes. For certification purposes, Plaintiff must show that the time between Quicken Loans' alleged use of each customer's credit score and the mailing of a section 1681g(g) notice was not reasonably practicable. Plaintiff's request, however, only seeks the dates that TransUnion provided credit scores to Quicken Loans. Independently, these dates have no bearing whatsoever on whether Quicken Loans used a credit score and the time period between use and mailing of the section 1681g(g) notice. Moreover, there is a significant likelihood that compliance with the First Request would require the production of consumer reports on class members who are not even part of the purported class (i.e. consumers whose credit scores were never used, among others). This request implicates the privacy rights of individuals who are complete strangers to the litigation, who may never become part of the litigation, and who likely have no interest in the distribution of their highly personal and confidential information. These concerns vastly outweigh any legitimate need for the information that Plaintiff may concoct.

As in *Tech*, because Plaintiff's requests seriously implicate the substantial privacy concerns of third parties, and the information sought has no independent relevance, the Court should quash the First Request and/or issue an appropriate protective order.  *See also Brown v. Wal-Mart Stores, Inc.*, No. 5:09-CV-03339-EJD, 2012 U.S. Dist. LEXIS 163731, at *12-13 (N.D. Cal. Nov. 15, 2012) (recognizing that disclosure of contact information and social security numbers implicates the privacy interests of potential class members, and the privacy interests are particularly strong when the individuals whose privacy is being intruded may not ultimately belong to the class).

> d.   Plaintiff's First Request is impermissibly overbroad

The Court should also grant Quicken Loans' motion to quash and for a protective order because Plaintiff's First Request is impermissibly overbroad.  This is true for several reasons.  First, in Plaintiff's Amended Complaint she defines the purported class to include natural persons residing in the United States who were the subject of at least one consumer credit score obtained and used by Quicken Loans between *May 1, 2010 and May 1, 2012*. (Am. Compl. ¶ 30).  In Plaintiff's First Request, however, she seeks any and all consumer reports provided to Quicken Loans between May 1, *2007* and May 1, 2012.    Plaintiff's First Request seeks information on individuals who would not be within the purported class, even if Plaintiff was able to successfully move for class certification.  Moreover, consumer reports pre-dating the purported class period are irrelevant as to Quicken Loans' handling of section 1681g(g) notices within the class period.  As a result, the First Request is impermissibly overbroad.

Second, the breadth of the request does not bear a reasonable relationship to the breadth of the claim at issue.  Plaintiff alleges in the Amended Complaint that Quicken Loans failed to provide the notices allegedly required by section 1681g(g) within a reasonably practicable time of Quicken Loans' obtainment and use of the credit scores corresponding to those notices.  (Am.

Compl. ¶ 42).  Similarly, her purported class is defined as those individuals on whom Quicken Loans "obtained and used" a credit score.  (Am. Compl. ¶ 30).  Thus, Plaintiff's claim is only brought on behalf of those individuals whose credit scores Quicken Loans purportedly used. Plaintiff's First Request is not limited accordingly.  The request seeks information regarding any consumer report provided to Quicken Loans, regardless of whether Quicken Loans used the consumer report.  Therefore, it is impermissibly overbroad and the Court should grant Quicken Loans' motion.

**2.      The Second Request Seeks Irrelevant Information and it is Overbroad**

In Plaintiff's Second Request, she seeks "[a]ny and all billing statements for consumer reports that contained a credit score provided by you to Quicken Loans from May 1, 2007 through May 1, 2012."  Similar to Plaintiff's First Request, this request also seeks information that is irrelevant to the parties' claims and defenses and is impermissibly overbroad.

a.      Irrelevance

As discussed above, Plaintiff's claim as pled turns entirely on the issue of whether Quicken Loans provided her and other purported class members a copy of the section 1681g(g) notice within a reasonably practicable time of Quicken Loans' use of the credit score triggering that notice.  The billing statements that TransUnion issues to Quicken Loans pertaining to the consumer reports TransUnion provides have no bearing on any of the following information: (1) the date that Quicken Loans receives any of the consumer reports at issue; (2) the date Quicken Loans allegedly uses any of the consumer reports at issue; (3) whether or not Quicken Loans actually uses any of the consumer reports at issue; (4) the date Quicken Loans sends the section 1681g(g) notice (when required); or (5) the time period between the use of a credit score and the sending of the section 1681g(g) notice.

Plainly, the billing statements Plaintiff requests are irrelevant to the parties' claims and defenses. While Plaintiff may argue that the billing statements may show the number of consumer reports that TransUnion provided to Quicken Loans, and, thus, whether the numerosity element of class certification is satisfied, Quicken Loans has already stipulated that it will not seek to defeat class certification on the ground that the numerosity element of Rule 23 is not satisfied in the present case. This acknowledgment renders moot any argument Plaintiff may make regarding the request's relevance to numerosity.[5] As a result, the Court should grant Quicken Loans' motion.

     b.    <u>Overbreadth</u>

Much like the First Request, Plaintiff's Second Request is also impermissibly overbroad. As discussed above, Plaintiff defines the purported class to include natural persons residing in the United States who were the subject of at least one consumer credit score obtained and used by Quicken Loans between *May 1, 2010 and May 1, 2012*. (Am. Compl. ¶ 30). Yet, the Second Request seeks all billing statements for consumer reports that contained a credit score provided to Quicken Loans from May 1, *2007* through May 1, 2012. Even if Plaintiff was able to successfully move for class certification, many of the billing statements dated during the time period requested would have no relation to the individuals in the purported class. Therefore, the Second Request is overbroad.

Additionally, the Second Request seeks billing statements simply for consumer reports that contained a credit score. This request is untethered from allegations in Plaintiff's claim, which only relate to consumer reports *used* by Quicken Loans. Plaintiff's Second Request contains no restrictions limiting the billing statements to only those pertaining to consumer

---

[5] To the extent Plaintiff argues that the billing statements are relevant because she contends that these statements would reveal information on specific purported class members, discovery on this issue is impermissible for the reasons discussed in Section 1 *supra*.

reports that Quicken Loans allegedly used.  Because Plaintiff's Second Request is impermissibly overbroad, the Court should grant Quicken Loans' motion.

**3.      The Fifth Request Seeks Information that is Irrelevant and Overbroad**

In the Fifth Request, Plaintiff broadly seeks "[a]ny and all contracts between [TransUnion] and Quicken Loans."  This request is entirely divorced from the allegations in the Amended Complaint.  It seeks irrelevant information and is impermissibly overbroad.  For those reasons, the Court should quash the request.  In the alternative, the Court should issue a protective order eliminating the Fifth Request from the subpoena *duces tecum*.

Plaintiff does not even attempt to limit her Fifth Request to information that is relevant to the subject matter at issue in this litigation.  Her request for "all contracts" bears no reasonable relationship to the timing of Quicken Loans' section 1681g(g) notices, the use of consumer reports pertaining to those notices, or the timing of such alleged use.  In fact, the request has no reasonable relationship to the FCRA at all.  Because the request is entirely untethered from the matters involved in this litigation, it seeks irrelevant information, is overbroad, and is, thus, impermissible under the Federal Rules of Civil Procedure.

In *AttorneyFirst, LLC v. Ascension Entm't, Inc.*, No. 2:03-cv-02467, 2006 U.S. Dist. LEXIS 37012, at *14 (S.D. W.Va. June 2, 2006), the plaintiff issued discovery requests seeking "all documents, including correspondence, memoranda, contracts, faxes, emails and other writings" between several defendants.  One defendant objected to this request as overbroad and unduly burdensome because it sought irrelevant information.  *Id.*   The Court agreed, ruling that the request was impermissible.  According to the Court, the request "calls for production of far more than what could conceivably be relevant here."   *Id.* at *15.  The Court noted that the request was not reasonably tailored to the "matters alleged in the Complaint" and the "time

frame relevant to [the] action." As a result, the court held that the defendant did not have to respond to the request as drafted.

Like in *AttorneyFirst*, the Fifth Request calls for more than could conceivably be relevant here. It is not narrowed to the timeframe at issue in the Amended Complaint or topics raised in the Amended Complaint.[6] Because it seeks irrelevant information and is overbroad, the Court should quash the Fifth Request. In the alternative, the Court should issue a protective order eliminating the Fifth Request from the subpoena *duces tecum*.

**4.     Plaintiff's subpoena duces tecum was improperly served**

Even if Plaintiff's subpoena was substantively proper, which it is not, the Court should quash the subpoena because it is procedurally improper. Under Rule 45(a)(2)(C) of the Federal Rules of Civil Procedure, a subpoena for the production of documents must be issued from the court for the district where the production or inspection is to be made. Fed. R. Civ. P. 45(a)(2)(C). Various courts interpreting this provision have held that, to be proper, a subpoena for documents of a third party should be issued out of the court encompassing the location of the documents.

For example, in *LFP Internet Group, LLC v. Does*, No. 10-MC-122, 2011 U.S. Dist. LEXIS 5534, at *1-2 (D.S.D. Jan. 20, 2011), a party issued a subpoena to a nonparty out of the Northern District of Texas which sought records based in Sioux Falls, South Dakota. According to the court, because the party sought "information from [the nonparty's] office in Sioux Falls, South Dakota…. only a district court in the District of South Dakota has jurisdiction to issue a

---

[6] Quicken Loans has not objected to requests number three and four in Plaintiff's subpoena to TransUnion, which seek documents TransUnion provided to Quicken Loans concerning the requirements of section 1681g(g) and correspondence between TransUnion and Quicken Loans concerning the requirements of section 1681g(g). Because those requests deal specifically with interaction between TransUnion and Quicken Loans pertaining to section 1681g(g), Plaintiff has no need to also vaguely seek "all contracts" between TransUnion and Quicken Loans.

nonparty subpoena on [the nonparty's] records." *Id.* at *3.  As a result, the court quashed the subpoena.  *See also Richardson v. Cuccinello,* No. 3:CV-09-1543, 2009 U.S. Dist. LEXIS 110939, at *5-6 (M.D. Pa. Nov. 30, 2009) (holding that a nonparty is not required to produce documents located more than one hundred miles from the place where the production is requested); *Myles v. Dierberg's Mkts., Inc.*, No. 4:09-cv-573, 2009 U.S. Dist. LEXIS 98172, at *3 (E.D. Mo. Oct. 22, 2009) ("Under this authority, a Rule 45 subpoena duces tecum issued from this Court for the production of documents located in other districts would be invalid."); "*Gutescu v. Carey Int'l, Inc.,* No. 01-4026-CIV, 2003 U.S. Dist. LEXIS 27505, at *5 (S.D. Fla. June 25, 2003) ("This Court does not have the power to issue a subpoena duces tecum to National Union, a non-party located in New York City, for the production of documents located in the Southern District of New York to a location within this District.").

In the present case, Plaintiff issued the subpoena duces tecum to TransUnion out of the Southern District of West Virginia.  The documents Plaintiff seeks, however, to the extent they exist, are likely not located in the Southern District of West Virginia.  Consequently, Plaintiff's subpoena runs afoul of the procedural requirements of Rule 45(a)(2)(C).   The Court should quash the subpoena.

## CONCLUSION

For the reasons set forth above, Quicken Loans respectfully requests the Court quash Requests one, two and five of Plaintiff's subpoena *duces tecum* to TransUnion.  In the alternative, Quicken Loans respectfully requests that the Court issue an appropriate protective order restricting the requests in the subpoena to requests three and four.

Dated:  August 7, 2013                    Respectfully Submitted,

                                          **QUICKEN LOANS, INC.**

                                          By:     /s/ John C. Lynch
                                                        Of Counsel

John C. Lynch (W.V. Bar No. 6627)
Jason E. Manning (W.V. Bar No. 11277)
*Counsel for Quicken Loans, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston Division**

**ALISHA KINGERY,
f/k/a ALISHA WILKES,
individually and on behalf of all
others similarly situated,**

        **Plaintiffs,**

      **v.**                            **Civil Action No. 2:12-cv-1353**

**QUICKEN LOANS, INC.,**

        **Defendant.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiff**
John W. Barrett
Jonathan R. Marshall
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Leonard A. Bennett
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA 23601
lenbennett@clalegal.com

John C. Bazaz
Law Offices of John C. Bazaz, PLC
4000 Legato Rd., Suite 1100
Fairfax, VA 22033
jbazaz@bazazlaw.com

Matthew J. Erausquin
Consumer Litigation Associates, P.C.
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
matt@clalegal.com

Ian B. Lyngklip
Lyngklip & Associates Consumer Law Group
24500 Northwestern Highway, Suite 206
Southfield, MI 48075
E-mail: ian@MichiganConsumerLaw.com

    /s/ John C. Lynch
John C. Lynch (W.V. Bar No. 6627)
*Counsel for Quicken Loans, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

21165997v1