UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston Division

ALISHA KINGERY, f.k.a. Alisha Wilkes
on behalf of herself and those similarly
situated,

                        Plaintiff,

v.                                                    Civ. No. 2:12cv1353

QUICKEN LOANS, INC.,

                        Defendant.


PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
RULE 30(b)(6) TESTIMONY

        Plaintiff brings this motion to address the misconduct of Defendant and its

counsel specifically pertaining to its belated production of a Rule 30(b)(6) deponent and

the conduct within and related to that September 5, 2013 deposition.  Without moving the

court, Quicken (by its counsel): (1). Refused either to produce a witness with knowledge

of core topics or alternately to seek relief of the Court for protection; (2.) repeatedly

interrupted Kingery's counsel during that deposition, and continually instructed

Quicken's employee witness to not answer counsel's deposition questions; and (3.)

served - at literally "the Eleventh Hour"  (11:03 pm, October 1, 2013) - an Errata sheet

that materially altered that testimony and did so without the actual signature (sworn or

otherwise) of the deponent or adequate explanation of the basis for these changes.[1]

---

[1] This case has been hard fought.  But it has involved an ongoing series of discovery disputes regarding
Quicken's deposition scheduling or witness production, document productions and now eight
"supplemental" Rule 26(a)(1) disclosures, the last one this week.  Plaintiff has endured and dealt with such
matters largely without seeking Court intervention and does not now seek relief for these events other than
as requested herein.

[2] Quicken's new applicant system (LOLA) uses a consumer's credit score in a number of ways even before
submitting the file for underwriting.  For example, the consumer's credit score is obtained routinely upon
contact and before any actual written documents are presented or signed, is used to evaluate and "Get

Plaintiff asks the Court to reopen the Defendant's Rule 30(b)(6) deposition, order the attendance at the deposition of a person or persons with knowledge on the narrow topics presented herein and to permit the enlarged time to take the deposition, receive an expedited transcript and use the evidence with regard to the Parties' motions still intended for filing by October 21, 2013.

## CASE OVERVIEW

Ms. Kingery brings this putative class case based on Quicken Loans' violation of the credit score disclosure requirements of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681g(g). This provision requires mortgage lenders to provide a specific FCRA credit score disclosure "as soon as reasonably practicable" after it "uses a consumer credit score … in connection with an application initiated or sought by a consumer[.]" 15 U.S.C. § 1681g(g)(a). Under this provision, any person who uses a credit score must send a notice to the subject of that score, providing them with a copy of the score, and a notice of their rights under the FCRA. This provision provides information to consumers that can assist them in both negotiating the terms of a mortgage, shopping other sources of loans, and identifying possible problems with their consumer reports. The parties dispute the import of these terms – possible legal questions to be litigated on summery judgment.[2] But improperly, Quicken's defense has imposed its view of the statute (a

---

[2] Quicken's new applicant system (LOLA) uses a consumer's credit score in a number of ways even before submitting the file for underwriting. For example, the consumer's credit score is obtained routinely upon contact and before any actual written documents are presented or signed, is used to evaluate and "Get Programs" to offer or discuss with the applicant and even used on a nightly basis for consumers who have been initially "denied" or "withdrawn" in order to determine eligibility for Quicken's "Second Voice" program. That program reviews consumers with a *credit score in excess of 640* for second chance for review and approval by a more experienced mortgage banker. Quicken's 30(b)(6) witness had little or no knowledge of the automated uses of credit scores in the LOLA process and computer system. (Deposition of Amy Bishop, Ex. A). Ms. Kingery's counsel only learned of the various internal functions of the scores by Quicken at the deposition of Bradley Hein on October 1, 2013. The revelation by Mr. Hein of the systemic review of credit scores by Quicken's LOLA system prompted the late-night issuance of an Errata

2

view rejected expressly by the Federal Trade Commission, the Federal Reserve and even its own compliance staff)[3] as a unilaterally imposed discovery bar.  Defendant refuses to discuss or produce documents and testimony that would be relevant upon Plaintiff's view of the statute.  In this case, the Plaintiff has herein discovered that there was as much as a 21 day period between Quicken's first use of her credit report and score and the date Defendant actually made the "as soon as reasonably practicable" disclosures.

Ms. Kingery contacted Quicken in April of 2010 about a mortgage to save her home that was being foreclosed upon.[4]  As part of its ordinary processes, Quicken requested and received a credit score concerning Ms. Kingery on May 3, 2010.  Quicken did not send Ms. Kingery a copy of her credit score or the credit score notice then.  Rather Quicken held that notice while its mortgage bankers and computer systems continued to evaluate the credit score it had on Ms. Kingery every nightly, in order to determine whether it could place her in an available mortgage product.[1]  Three weeks later, on May 24, Quicken sent the credit score disclosure notice to Ms. Kingery along with a notice telling her that she had been denied credit.  Ms. Kingery claims that Quicken violated § 1681g(g) by unnecessarily withholding this notice from long after it received her credit score.

---

sheet to the deposition of the 30(b)(6) witness. (Ex. B) The Deponent had spoken with Mr. Hein in advance of the Rule 30(b)(6) deposition (Bishop Tr. 15-16).  The errata sheet materially altered the 30(b)(6) testimony on this core issue in the case.

[3] Quicken claims that it is only obligated to make these disclosures after it has made a decision to approve a final and formal loan application that was based (apparently entirely) upon the credit score.  However, the near consensus view is that such "use" trigger occurs when a lender actually requests and receives the score.

[4] Plaintiff was a victim of mortgage fraud by her former husband.  She successfully litigated the real property questions in Virginia state court to force removal of the forged Deed of Trust, as well as a credit reporting claim against the associated mortgage company in the United States District Court for the Eastern District of Virginia.  *Wilkes v. Experian Information Solutions, Inc. et al*, 1:10-cv-01160, (E.D.Va).

## CORE DISCOVERY ISSUES IN THE CASE

Discovery in this putative class case has focused on a targeted set of issues that can be categorized into three areas: (1.) Quicken's actual business process. When and how it obtains and uses credit scores. When and how it discloses that score to the consumer applicant; (2.) Whether Quicken's violation of the FCRA was "willful" under the statute. Whether Defendant took a risk or reckless position as to whether or not the procedure demanded by its business leadership violated the FCRA; and (3.) Whether a class and subclass can be certified. Is there a sufficiently numerous and identifiable group of consumers who received the mandated FCRA notice later than "as soon as reasonably practicable." Whether that time is 3 business days, 10 business days or even 20 business days.

Each of these factual issues have been at issue since the outset of the case and lie at the root of the questions that the Court will need to resolve on class certification and summary judgment. All of these areas of discovery are raised by the litigation position of Quicken itself and present no surprises.

## PLAINTIFF SEEKS AN ORDER REOPENING THE RULE 30(b)(6) DEPOSITION AND COMPELLING QUICKEN TO PROVIDE SUBSTANTIVE RESPONSES TO PLAINTIFF'S QUESTIONS

Fed. R. Civ. P. 30(c)(2) cautions that "a person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." The rule in this Circuit with respect to deposition proceedings has remained unchanged for over 25 years—deposition questions must be answered, even if objection is made, unless a claim of evidentiary privilege is raised. *See, Ralston Purina Co. v. McFarland,* 550 F.2d 967 (4th Cir.1977).

Notwithstanding such established rules of conduct, Defendant has ignored this prohibition with its lead counsel interrupting, obstructing and rendering nearly intolerable the depositions of Defendant's primary Rule 30(b)(1) witness, and the same deponent presented at Quicken's Rule 30(b)(6) designee on September 5, 2013.  The transcript is filled with more interruption than examination and repeatedly defense counsel expressly instructs his client's witness not to answer (on grounds other than the question invaded privilege or sought Defendant's legal contention).

Plaintiff has endured similar misconduct throughout this case, with Defendant's refusal to respond in any fashion to all but her first round of written discovery and its only limited and heavily objected response to even that first round of requests.  Every stage and step has been a new full-blown negotiation.  Dates.  Locations.  Times.  Formats.  All of it.  And still, Plaintiff now seeks the Court's intervention at this stage to order Quicken to again produce a designee for a Rule 30(b)(6) deposition on the discrete topics identified below.[5]

The Plaintiff, Alisha Kingery, by counsel has moved the court for an order to compel the testimony of Quicken Loans, Inc.'s corporate designee pursuant to Fed. R. Civ. P. 30(b)(6), 30(c) and Fed. R. Civ. P. 37(a)(3)(B)(i), 37(a)(3)(C), 37(a)(4).  The Plaintiff seeks an Order compelling testimony for the discrete purpose of obtaining responses to Plaintiff's duly noticed Rule 30(b)(6) deposition topics, for which Quicken Loans designated Amy Bishop.  Ms. Bishop appeared for her deposition, but refused to answer or was instructed not to answer Plaintiff's questions without a cognizable reason under the Federal Rules of Civil Procedure.  In particular, the Defendant has knowledge

---

[5] Plaintiff will address the remaining misconduct and discovery failures at the appropriate posture pursuant to Fed. R. Civ. P. 37(c)(1).

of the information required to establish numerosity under Fed. R. Civ. P. 23, but has refused to cooperate in the discovery of the class size. Therefore, the court should enter an order overruling Defendant's objections, compelling answers to Plaintiff's deposition questions, and ordering other relief that is just and proper.

The Plaintiff certifies that counsel have in good faith attempted to meet and confer to resolve the issues herein pursuant to the Federal and Local Rules governing discovery disputes.

## SUMMARY OF CASE

Because the FTC and Federal Reserve standard set a three day window as the "as soon as reasonably practicable" threshold, this was a time period included in the class definition included in the governing Complaint:

> **All natural persons residing in the United States who were the subject of at least one consumer credit score obtained and used by Quicken between May 1, 2010 through May 1, 2012 in connection with its evaluation of an application initiated or sought by such natural person for a consumer mortgage loan secured by 1 to 4 units of residential property, and to whom the credit score disclosure notice was not provided to that person within 3 business days after Quicken obtained the credit score.**

Now, at the end of discovery, Plaintiff will move to certify a class at such threshold, but as well at an alternate subclass reflecting the longer period reflected in her own Quicken records.

## HISTORY OF DISCOVERY

### A. Written Discovery

The Plaintiff has propounded four sets of discovery. Plaintiff's first discovery was served on October 22, 2012, which response time was extended by agreement to

allow the Defendant answer discovery by January 11, 2013. On January 22, 2013, Defendant responded with general, boilerplate objections to all of the interrogatories and requests for production of documents. At the same time, Defendant supplied answers to certain interrogatories and produced many documents, which were largely non-responsive. The parties met and conferred in order to resolve the disputed discovery, at which time they were able to resolve some, but not all of the disputes. The parties continued to meet, confer and argue over the Defendant's discovery non-responsiveness. The primary divide related to the issues of numerosity (and related Rule 23 elements) for a class with a 3-day delay, as well as possible subclasses at longer delays. Accordingly, Plaintiff served additional discovery sets – three additional ones – targeting almost solely that issue. She served subpoenas to third parties Equifax, Trans Union and Experian. Defendant served two supplemental responses and objections to the first set of written discovery on May 6, 2013, and August 5, 2013. By the time of its fourth supplementation on August 5, 2013, Defendant still objected to four of the fifteen interrogatories and thirteen of the thirty-six requests for production. On August 5, 2013, it supplemented its interrogatory responses and mandatory disclosures to include the names *six* employee witnesses that had never been disclosed before as well as a fifth supplemental disclosure of documents. (Ex. C). As of today, the Defendant has served Eight Supplemental mandatory disclosures. (Doc. 147).

Though Defendant is in possession of all the information necessary to determine numerosity, it refuses to produce that information in response to discovery requests, deposition questions, and Moved to Quash the Plaintiff's third-party subpoenas to the consumer reporting agencies in order to determine numerosity. After fully briefing the

issue, when it was ripe for decision, Quicken Loans withdrew its Motion to Quash and attempted to reserve the ability to meet and confer on the third-party subpoenas. (Docs. 144-146).

Plaintiff propounded discovery to determine class size on May 22, 2013; June 12, 2013; and July 15, 2013. The new discovery contained a total of four additional requests for production of documents. First, Plaintiff sought information about the number of Defendant's credit score disclosure notices between May of 2007 and May of 2012 and the other for every credit report associated with Matthew Muskan, LOLA and/or AMP/Lakewood or a stipulation as to the number of credit reports associated with Muskan since May of 2010. Defendant objected to the second request as vague, ambiguous, irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence, and that the purpose was to harass Quicken Loans. (Ex. D). Despite its objections, the Defendant stipulated to the fact that the number of credit reports associated with Muskan exceeded 1000. Defendant objected to the third request as extremely overly broad, not reasonably calculated to lead to the discovery of admissible evidence, outside the scope of discovery, seeking class discovery when a class had not been certified, irrelevant, and seeks the personal information of third-party consumers. (Ex. E). Despite the objection, Defendant stipulated that within the previous two years, the Defendant supplied sufficient numbers of credit score disclosures to meet the numerosity requirement of Rule 23. Plaintiff propounded two additional interrogatories requesting detailed and specific information to demonstrate a 15 U.S.C. § 1681g(g) claim. Defendant's tack remained consistent: lodge a general, non-specific objection and refuse to provide substantive objections or responses. (Ex. F).

On July 14, 2013, the Plaintiff propounded her Fourth Request for Production of Documents that contained two requests: (1) production of each unredacted database or, in the alternative, a spreadsheet, containing specific information regarding the class claims and (2) production of policies governing preparation and delivery of 1681g(g) notices. Defendant objected to both interrogatories and did not produce any responsive documents. Defendant's objections to producing the database, despite being rather lengthy, were actually inapplicable to the question and otherwise boilerplate, interpreting the question in a way it was not written to mean that the Plaintiff sought a single database with all the information or for the Defendant to create such a database. The interrogatory seeks any and all databases with the information sought. However, the Defendant has the option to produce a spreadsheet instead of its entire, unredacted databases. Finally, Plaintiff served Defendant Quicken Loans with Plaintiff's Fourth Request for Production of Documents to Defendant Quicken Loans, Inc. and Plaintiff's Second Set of Interrogatories to Defendant Quicken Loans, Inc. (Ex. G). On or about August 19, 2013, Defendant Quicken Loans responded to Plaintiff's Fourth Request for Production of Documents to Defendant Quicken Loans, Inc. by objecting to each document request.

Plaintiff included these issues as topics for Defendant's Rule 30(b)(6) witness testimony. The information is neither protected by the attorney client privilege, nor is it irrelevant. The information is discoverable and a proper Rule 30(b)(6) topic to determine numerosity and class size. The Plaintiff has attempted in every proper way to obtain discovery as to class size without involving the court.

**B.    Depositions**

9

Meanwhile, on or about July 15, 2013, Plaintiff served Defendant Quicken Loans with Notice of Rule 30(b)(6) Deposition that contained 70 narrowly tailored topics.[6] The main feature of the Defendant's corporate witness' testimony was non-responsiveness.

The Rule 30(b)(6) deposition was noticed for August 5, 2013. On or about July 24, 2013, Defendant Quicken Loans objected to all but 10 topics. A meet and confer telephone conference was held on August 1, 2013. After the meet and confer, Plaintiff provided Defendant Quicken Loans with a letter summarizing the topics discussed at the August 1, 2013 meet and confer telephone conference and the deposition was moved to August 9, 2013 by agreement. However, Defendant Quicken Loans canceled the deposition and failed to provide documents and information as promised in the August 1, 2013 meet and confer telephone conference. The deposition was then rescheduled to September 5, 2013.

On or about August 30, 2013, Defendant Quicken Loans provided its revised 30(b)(6) topics. On or about September 3, 2013, Plaintiff served Defendant Quicken Loans with her Amended Notice of Rule 30(b)(6) Deposition. Defendant Quicken Loans quickly objected and provided additional information about the logistics of the deposition. Plaintiff revised the notice accordingly and the deposition was taken on September 5, 2013. However, throughout the deposition Defendant Quicken Loans refused to answer questions and was instructed by counsel to refuse to answer questions. (Amy Bishop Dep. Tr., attached as Ex. A). Counsel engaged in a meet and confer on the record during the testimony, at which time Defendant and its counsel refused to articulate

---

[6] The "70 Topics" actually include a much more limited number of discrete "topics," with the "70" including multiple slight permutations or various subjects such as topics 27 – 62, which were permutations of the same six questions, only with different dates interchanged, *cf.* topic 88, 71, 83, 81 and 3.

a cognizable reason under the Federal Rules to justify its complete refusal to answer and to instruct the deponent to not answer. (Bishop Tr. 135-140).

The deponent also testified to information that had not been previously provided in written discovery, which caused Plaintiff to revisit Defendant Quicken Loans' written discovery responses.

### 1. Discovery Misconduct by Defendant in the Rule 30(b)(6) deposition

**(a.) Counsel repeatedly and improperly instructed the witness to not answer questions without a legal reason to do so.[7]**

The transcript of the Rule 30(b)(6) deposition reads to show remarkable and aggressive efforts by Quicken's counsel to disrupt, obstruct and expressly bar the examination. It is possible that the Court may not have seen many more flagrant examples of the Rule 30(c) prohibition on instructions not to answer. In this case, Quicken waived attorney-client privilege in order to try and argue that it made an adequate attempt at compliance. And for this deposition, it designated its primary witness in these regards – the lead in house attorney overseeing the compliance process, Amy Bishop. Mr. Lynch repeatedly instructed the deponent not to answer without articulating a legal reason to do so in the deposition. For example:

> **Q by Mr. Lyngklip:** Ms. Bishop, I want to go back to the last question and we're talking about the timeframe back in 2004 when the policy concerning FACTA compliance was developed. At that time, was Quicken aware of the line of case – line of cases discussing Section 1681q of the Fair Credit Reporting Act?
> **Mr. Lynch:** I am going to object to form, and I'm also going to object that it is not one of the topics that's been notice for today's deposition. If you can point me to the topic, I'm more than happy. And you're saying 1681q?

---

[7] Relevant portions of the Deposition of Amy Bishop are attached as Ex. A. Counsel instructed the deponent to not answer without legal justification: Tr. 53:19-22; 54, 55:17-25; 56:9-14; 56 25-57:1; 57:2-58:1; 58:4-5, 11-12; 101: 2-11; 132:11-22; 133:4; 146:2-3; 148-149; 158-160; 162:23-25.

> . . .
> **Mr. Lyngklip**: It's topic number 4. When I talk –
> **Mr. Lynch**: Let me look, let me look.
>  . . .
> **Mr. Lynch**: I'm going to object and instruct her not to answer on that. If you want to ask her about development of your policies and procedures regarding use on 1681g(g), you're fine. You cannot go through in this deposition, and say, is Quicken Loans aware of, and start pointing to every other statute and lines of cases. If you wanted to know that, you give us a Notice of what these lines of cases are, and you give us Notice on the statute you're talking about. Question number 4, she can answer.
> **Mr. Lyngklip**: Well, Mr. Lynch, I'm going to ask her whether or not that line of cases was brought to bear on their understanding of use in the development of this process, and it's well within the scope of this. If she knows, she knows, and if she doesn't, she doesn't, and it's well within the scope of the Notice – the Notice topics.
> **Mr. Lynch**: Well, I – I object, and I'm going to instruct her not to answer. I don't know what line of cases you're talking about, and you can't prepare a corporate witness by using terminology line of cases and picking a statue out. Is an unfair question and it hadn't been noticed for today.

(Bishop Tr. 54:20-58:1-12.).

Whether a question is in counsel's opinion "unfair" or "outside the topics" is not a cognizable reason to instruct a witness to not answer a question. *Ralston Purina Co*. *v*. *McFarland*, 550 F.2d 967, 973-74 (4th Cir. 1977). In fact, when testimony sought is alleged to be outside the scope of the Rule 30(b)(6) topics, a witness is still required to testify. *Falchenberg v. New York State Dep't of Educ*., 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008) *aff'd,* 338 F. App'x 11 (2d Cir. 2009) (A deposition by a Rule 30(b)(6) designee on topics outside the scope of the Rule 30(b)(6) notice are answered by the witness' individual knowledge).

There are a number of such examples of Defendant's counsel's unjustified instruction to not answer based on this reason, including:

> **Q by Mr. Lyngklip**: So, it would be fair to say that inquiries about applications would not be covered by ECOA, either, correct?

12

> **Mr. Lynch**: I'm going to object to form. That is outside the
> topics. No, that – at first you went to a different section of the
> FCRA, and now we're going to ECOA. I mean, this – this is
> starting to try to search for information for other purposes, and I
> just don't – I don't see how you tie that. Now we're on ECOA?
> **Mr. Lyngklip**: She said it doesn't – doesn't –
> **Mr. Lynch**: But that response in your parroting the words –
> **Mr. Lyngklip**: You can't interrupt me, John.
> **Mr. Lynch**: I can object, though, and that's what I'm trying to do,
> because I'm trying to allow you to ask question, but I'm – unless
> you can tie ECOA to implementation of the policies on this statute,
> nay other question to her opinions about ECOA, I'm going to
> instruct her not to answer. It's not a topic. There isn't ECOA
> anywhere in the topics, so I have not had an opportunity to prepare
> Quicken Loans to talk about ECOA. I'm not going to allow them
> to do it.

Bishop Tr. 100:11-101:11.

Notably, counsel objected and instructed the witness not to answer without

a reason several more times:

> **Q:** Did you do any investigation about how much work it
> would be for those people to accomplish that?
> **Mr. Lynch:** Objection to form. Accomplish what. I'm objecting
> to form and instructing not to answer. That's not a topic. That's –
> you're not going to ask some broad question trying to get some
> testimony. Not going to happen.

Bishop Tr. 132:11-15.

> **Mr.Lyngklip**: I am going to scoot down to topic number 80 on
> the Revised Notice.
> . . .
> **Mr. Lynch:** And, for the record, the witness is not prepared on
> this topic, but let me get to it.
> (Discussion of the record at 3:36 p.m.)
> **Mr. Lynch**: Yeah, she's not prepared. And we wouldn't answer
> that, anyway.
> **Mr. Lyngklip**: When you say you wouldn't answer that, do you
> mean you would instruct the witness not to answer?
> **Mr. Lynch:** Yes. I think that really goes into – yeah, I wouldn't.
> First of all, she's not prepared on that topic. We've never had a
> meet and confer on it. Second, I think that's an improper question

13

and, probably, would be engulfed by the stipulation we made and the classes defined in the Second Amended Complaint.

Bishop Tr. 157-158.

> **Mr. Lyngklip**: I haven't – I haven't – I haven't even asked a question yet.
> **Mr. Lynch**: Yea. But if it's relating to 93, that we just saw for the first time two days ago, I'm instructing her not to answer. And it's not a repear of an earlier topic. I just can't. I mean, you – there's just no way. This topic can't be issued two days before a corporate deposition. This isn't on e of the ones that is duplicative of the other ones.
> **Mr. Lyngklip**: John, I haven't asked a question yet.

Bishop Tr. 162:21-163:7

Defendant's counsel also repeatedly lodged numerous and not germane objections, which were unfounded, unspecified or unauthorized under the rules. To date, the Defendant has not moved for a protective order of any kind.

In addition to instructing the witness to not answer, counsel lodged usually unexplained "form objections" over 33 times, using that one word characterization to object on what were obviously "relevance" or scope bases.[8]

**(b.)    The Deponent was unprepared and evasive.**

Rule 30(b)(6) provides a vehicle for streamlining the discovery process. *See, Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir.1993); *Hooker v. Norfolk Southern Ry. Co.*, 204 F.R.D. 124, 126 (S.D.Ind. 2001); *Starlight International Inc., v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999) *Dravo Corp. V. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995).

> The Rule 30(b)(6) designee does not give his personal opinions. Rather, he presents the corporation's "position" on the

---

[8] Form objections on Bishop Tr. 41, 42, 43, 44, 46, 47, 50, 51, 52, 61, 71, 72, 75, 76, 79, 80, 89, 95, 97, 108, 109, 110, 120, 125, 128, 130, 134, 142, 146, 150, 151, 154, 156.

> topic. Moreover, the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. The corporation must provide its interpretation of documents and events. The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition. Were it otherwise, a corporation would be able to deceitfully select at trial the most convenient answer presented by a number of fingerpointing witnesses at the depositions. Truth would suffer.

*United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C.1996) (citations omitted, emphasis added). Once served with a 30(b)(6) deposition notice, any corporate defendant has the duty to produce people prepared to give complete, knowledgeable and binding answers on behalf of the corporation. *See*, *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). The corporate deponent must educate himself as to the matters on which testimony is sought. *Calzaturficia S.C.A.R.P.A. S.P.A. v. Fabiano shoe company*, 201 F.R.D. 33, 35 (D.C. Mass. 2001).

Similarly, the witness must familiarize himself with matters beyond their personal knowledge (*Buyck-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 343 (N.D.Ill. 1995)), and review all available corporate documentation that might bear on the topics of the deposition (*Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633 639 (D.Minn. 2000); *Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.*., 171 F.R.D. 135, 151 (S.D. N.Y. 1997)). The limitations of personal knowledge are irrelevant. *See*, *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730 (D.C. Kan. 2002) at 733. These requirements avoid the "bandying" by corporations where individual officers disclaim knowledge of facts clearly known to the corporation and

15

prevents the practice of presenting employees for their deposition who disclaim knowledge of facts known by other individuals within the entity. *Hooker*, *supra*. *See also*, *Alexander v. F.B.I.*, 186 F.R.D. 148, 152 (D.D.C.1999). *Michelman v. Hanil Bank, Ltd. (In re Jee),* 104 B.R. 289, 294 (Bankr.C.D.Cal.1989). *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79 (D.D.C.,1999); *Moore v. Summers* 113 F.Supp.2d 5, 26 (D.D.C.,2000). *Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56, 61 (S.D.N.Y.,1998). *See also*, *Paul Revere Life Insurance Company v. Jafari*, 206 F.R.D. 126 (D.C. Md. 2002) at 128 (arguments that a deponent has no duty to prepare regarding facts underlying contentions would render Rule 30(b)(6) useless). Likewise, the production of unprepared witness is also tantamount to a failure to appear. *Taylor,* 166 F.R.D. at 363 (citing *Resolution Trust Corp. v. Southern Union,* 985 F.2d 196, 197 (5th Cir.1993)); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.* 171 F.R.D. 135 , 151 (S.D.N.Y.,1997). Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. *Taylor*, 166 F.R.D., at 360. (citing *Buycks-Roberson v. Citibank Federal Sav. Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995); *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992)). Moreover, the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. *Lapenna,* 110 F.R.D. at 20.

16

The deposition demonstrates that the (in house litigation compliance attorney) deponent was unprepared or refused to testify.[9] The witness provided evasive testimony.[10]

> **Mr. Lyngklip**: And the corporation was also familiar with the criminal law provisions of Section 1681q for obtaining consumer reports under false pretenses?
> **A**. I know where you're going. That's just silly. Sure. Don't get me mad. Go ahead.

Bishop Tr. 51:15-19. When asked about use of credit scores within the LOLA system, the witness was unprepared:



> Q. So, that -- does that happen when the credit report is received by the system?
> **MR. LYNCH**: I'm going to object to form. You can answer.
> A. It is my understanding, yes.
> **BY MR. LYNGKLIP:**
> Q. Did you, specifically, check with somebody before you got here, or are we guessing about this?



Bishop Tr. 153-154.

When a witness refuses to answer, provides evasive answers, or is non-responsive, she has violated the requirements of Rule 30 and is subject not only to an order compelling substantive responses, but also sanctions. In this case, the deponent came unprepared and then later attempted to cure her deficient testimony through serving

---

[9] Bishop Tr. 13:9-24; 16: 4-25; 77: 5-8; 78: 10-11, 14; 80: 16-25; 81:4-25; 97-98; 102:18-25; 110:22-112:1.
[10] Bishop Tr. 59:2-7, 10-19; 60:1-9; 92; 142-144.

an errata that is apparently unsigned.  This is improper use of an errata sheet. Even though the errata sheet is of no effect because it does not strictly adhere to the Rule 30(e) technical requirement that it be signed by the deponent, the deposition should nonetheless be re-opened and the deponent subject to examination on the testimony she evaded as well as the testimony she has sought to change.

### III.    Argument

### A. Motion to Compel testimony for violations of Rule 30(c)

Defendant's counsel wantonly obstructed the Plaintiff's deposition of the Defendant's Rule 30(b)(6) witness.  There's no question that counsel's numerous, unfounded objections were unjustified and that the Defendant never sought a protective order in this case.  In order to grant the Plaintiff's motion to compel, the court must find that the Defendant refused to answer a question under Rule 30 without substantial justification.

The information Plaintiff seeks, especially regarding class size, is not remarkable in any way, other than the fact that the Defendant refuses to provide any answers.  Quicken Loans is a very large mortgage lender that extends between 20,000 and 40,000 residential mortgage loans every month.  Plaintiff attempted to offer non-controversial stipulations regarding class size, which should be a pro forma stipulation especially given the fact that Defendant can easily access this information.

Rule 30 provides in pertinent part:

> **(c)  Examination and Cross-Examination;  Record of the Examination; Objections; Written Questions.**
> . . .
>
> **(2)  *Objections.*** An objection at the time of the examination-- whether to evidence, to a party's conduct, to the officer's

qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

. . .

**(d) Duration; Sanction; Motion to Terminate or Limit.**

. . .

**(2)** *Sanction.* The court may impose an appropriate sanction-- including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent.

**(3)** *Motion to Terminate or Limit.*

**(A)** *Grounds.* At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

**(B)** *Order.* The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.

**(C)** *Award of Expenses.* Rule 37(a)(5) applies to the award of expenses.

There are only three grounds upon which counsel may object and instruct a party not to answer: (1) to preserve privilege, (2) to enforce a court-ordered limitation; (3) to seek a protective order. *Archer v. Crete Carrier Corp.*, Civ. No. 3:09CV3, 2010 WL 114245 (N.D. W.Va. Jan. 7, 2010)(discussing the limited circumstances where a

deponent may refuse to answer and ordering an award of sanctions to the movant). The

Fourth Circuit has spoken directly to this point of law:

> The action of plaintiff's counsel in directing Wagnon not to answer the
> questions posed to him was indefensible and utterly at variance with the
> discovery provisions of the Federal Rules of Civil Procedure. The broad
> scope of discovery is evident in Rule 26(b)(1) which provides that
> "(p)arties may obtain discovery regarding any matter, not privileged, which
> is relevant to the subject matter involved in the pending action". The Rule
> further states that "(i)t is not ground for objection that the information
> sought will be inadmissible at the trial if the information sought appears
> reasonably calculated to lead to the discovery of admissible evidence." The
> underlying philosophy of the discovery rules was stated by the Court in the
> landmark case of *Hickman v. Taylor*, 329 U.S. 495 (1947) at 507:
> […]
> The questions put to Wagnon were germane to the subject matter of the
> pending action and therefore properly within the scope of discovery. They
> should have been answered and, in any event, the action of plaintiff's
> counsel in directing the deponent not to answer was highly improper. The
> Rule itself says "Evidence objected to shall be taken subject to the
> objections", and Professor Wright says it means what it says, citing *Shapiro
> v. Freeman*, D.C.N.Y.1965, 38 F.R.D. 308, for the doctrine: "Counsel for
> party had no right to impose silence or instruct witnesses not to answer and
> if he believed questions to be without scope of orders he should have done
> nothing more than state his objections." Wright & Miller, Federal Practice
> and Procedure: Civil s 2113 at 419, n.22 (1970). We agree. If plaintiff's
> counsel had any objection to the questions, under Rule 30(c) he should
> have placed it on the record and the evidence would have been taken
> subject to such objection. If counsel felt that the discovery procedures were
> being conducted in bad faith or abused in any manner, the appropriate
> action was to present the matter to the court by motion under Rule 30(d).[11]

*Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973-74 (4th Cir. 1977). District courts

within the Fourth Circuit have applied this rule that counsel is not permitted to instruct

the witness not to answer. *Alexander v. Cannon Mills Co.*, 112 F.R.D. 404, 405-06

(M.D.N.C. 1986). ("The rule in this Circuit with respect to deposition proceedings is

clear—deposition questions must be answered, even if objection is made, unless a claim

of evidentiary privilege is raised. *See, Ralston Purina Co. v. McFarland,* 550 F.2d 967

(4th Cir.1977); (citations omitted)”); *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 97 (D. Md. 2012)(“In *Boyd v. University of Maryland Medical System,* this Court discussed the difficulties presented by this rule and by depositions generally: ‘[T]he issue which presents itself in this case—the appropriateness of counsel instructing a deponent not to answer questions during a deposition—has proven to be a recurring problem […] There simply is no more aggravating action than a lawyer improperly instructing a deponent not to answer a question.’ 173 F.R.D. 143, 144 (D. Md.1997)”).

The Fourth Circuit expanded its own interpretation of its decision in *Ralston Purina,* explaining that a true effort at fulfilling discovery is required of the parties to litigation, and a party has no right to instruct the deponent not to answer:

> Furthermore, at the deposition Smith's counsel repeatedly counseled his client to not answer questions, a direct violation of *Ralston Purina Co. v. McFarland,* 550 F.2d 967, 973 (4th Cir.1977), and Smith often gave evasive answers by stating that he could not remember many of the facts supporting his various claims.
>
> Fulfilling obligations under the rules requires much more than simply going through the motions. It requires, among other things, a true effort to fully answer interrogatories, to produce relevant documents in a timely manner, and to properly conduct oneself during depositions. These matters are important to the smooth and efficient operation of the judicial system and are not to be taken lightly. Though Smith and his counsel have offered various explanations for their actions, we are of opinion that their actions evidence a pattern of conduct that should not have been countenanced by the court.

*Smith v. US Sprint*, 19 F.3d 12 (4th Cir. 1994). In the case of Quicken's self-selected deponent, in-house attorney Ms. Bishop, even when counsel did not instruct her not to answer, her answers were evasive, non-responsive, and combative. Ms. Bishop even lodged a few objections of her own:

By Mr. Lyngklip: ██████████████████████████
████████████████████████████████████████

████████████████████████████████████
████████████████

A:      It wasn't required to be sent any earlier than it was.
Q:      I'm sorry. That wasn't the question.
A:      That was my answer.
Q:      I understand you're – that – I'm – I'm asking, did Quicken
        have everything that it needed to prepare that notice?
A:      That is irrelevant.

Bishop Tr. 36:20-37:6. Beyond the propriety of such tag-team objections, there is no

doubt that even where counsel objects to questions, the deponent is required to answer:

Even where counsel objects to questions of a Rule 30(b)(6) deponent as being

outside the scope of the topics, the deponent is always required to answer, even as such

testimony then may ultimately not bind the corporate defendant:

> Questions and answers exceeding the scope of the 30(b)(6) notice will not
> bind the corporation, but are merely treated as the answers of the
> individual deponent. *See Detoy v. City & County of San Francisco,* 196
> F.R.D. 362, 367 (N.D.Cal.2000); *accord King v. Pratt & Whitney,* 161
> F.R.D. 475, 476 (S.D.Fla.1995) *aff'd,* 213 F.3d 646 (11th Cir.2000). As
> these courts noted, "if the [30(b)(6) ] deponent does not know the answer
> to questions outside the scope of the matters described in the notice, then
> that is the examining party's problem." *Detoy,* 196 F.R.D. at 367; *King,*
> 161 F.R.D. at 476.

*Falchenberg v. New York State Dep't of Educ.,* 642 F. Supp.2d 156, 164 (S.D.N.Y. 2008)

*aff'd,* 338 F. App'x 11 (2d Cir. 2009).

Pursuant to Fed. R. Civ. P. 37(a)(3), the Plaintiff is entitled to an order compelling

the deponent to answer her questions where the deponent has failed to answer or has been

evasive or provided an incomplete answer to a question propounded under Rule 30. In

this case, the Defendant was not only without substantial justification to refuse to answer,

but there was no justification for refusal to answer or counsel's instruction to refuse to

answer. *CSX Trans. v. Gilkison*, Civ. No. 5:05CV202, 2009 WL 2883012, at * 2 (N. D.

W. Va. Sept. 2, 2002)(granting a motion to compel and ordering sanctions where the

defendant had no legal basis to refuse to answer). The Plaintiff seeks answers to the questions posed to the deponent at the Rule 30(b)(6) deposition generally, but specifically to obtain the discovery regarding numerosity to which she is entitled. *Smith v. Jefferson County Comm'n*, Civ. No. 3:12CV106, 2012 WL 112345 (N.D.W.Va. Jan. 12, 2012).

There is no possible room for doubt in this case that the Defendant has engaged in a flagrant violation of Rule 30 by refusing to answer and by counsel instructing the Defendant not to answer. The court should compel the testimony sought in this motion without limitation, order the award of costs and fees to bring the motion, for the September 5, 2013, deposition and to resume the deposition of Quicken Loans corporate designee.

**B. Defendant has improperly attempted to revise the testimony of the corporate representative in contravention of Rule 30(e).**

At 11:03 p.m. on October 1, 2013, Quicken Loans served by email an errata sheet to Amy Bishop's testimony that substantially changed her deposition testimony without (1) Amy Bishop's signature on the statement[11]; or (2) a proper explanation. (Ex. B). Rule 30(e) provides in pertinent part:

> Review by the Witness; Changes. – (1) Review; Statement of Changes. On request by the deponent or a party before the deposition is complete, ***the deponent must*** be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to ***sign a statement listing the changes and the reasons for making them***.

---

[11] The Verification of Deponent reads: "I, having read the foregoing deposition consisting of my testimony at the aforementioned time and place, do hereby attest to the correctness and truthfulness of the transcript." Both the verification and the last page of the errata sheet has a signature line for Amy Bishop, on which appears a signature, a backslash, and the letters ADL. Both are dated October 1, 2013. Generally, a signature followed by initials indicates that someone other than the person whose name appears actually signed the documents. Without a verified signature, it is improper to consider the changes in the errata. *Combs v. Rockwell Int'l*, 927 F.2d. 486, (9th Cir. 1991).

Fed. R. Civ. P. 30(e)(emphasis added).  This court has held that it will "insist on strict adherence with the technical requirements of the rule." *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 653 (S.D.W.Va. 2001); accord *Hershberger v. Ethicon Endo-Surgery, Inc*. 2:10CV837, 2012 WL 1067941, at * (2 (S.D.W.Va. Mar. 29, 2012).  In this case, it appears that the deponent Amy Bishop did not sign the verification or the statement listing the changes and the reasons therefore under Rule 30(e)(1)(b).  Further, the very generalized and repeated explanations or reasons for the change do not comply with the strict provision of the rule.

If changes are made, then the deponent opens herself up to re-opening the deposition and cross-examination on all the changes she made.  *Holland*, 198 F.R.D. at 653 (quoting *Lugtig v. Thomas,* 89 F.R.D. 639, 641 (N.D. Ill. 1981) "[t]he witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case. (Wright & Miller, Federal Practice & Procedure, § 2118)").   The reason provided for changing her testimony, was generally that she had not adequately prepared for all the topics in the notice and that she had to go back and "review the Plaintiff's lead detail history to clarify any explanations of, omissions, or misstatements of my previous testimony."  She also conducted further research of "Second Voice," Quicken Loans' data maintenance, LOLA and AMP, to change her responses.

Because the Deponent was unprepared for her testimony and had to do further research on duly-noticed topics for which the Defendant never sought a protective order, the Plaintiff should be permitted to re-open the deposition testimony in addition to the other reasons set forth in this motion.

## CONCLUSION

The parties have met and conferred over Defendant's failure to prepare for the duly-noticed deposition topics, to respond to questions propounded at the deposition itself, and for counsel's instruction to the witness to not answer questions despite the fact the instruction was not permitted under the Federal Rules. The Defendant has not moved for a protective order or sought any other protection from its discovery obligations; therefore, the Plaintiff respectfully requests the court Order:

(1)     Re-opening the Rule 30(b)(6) deposition and compelling the Defendant to substantively respond to the Plaintiff's duly-notice topics at a time and place convenient to the Plaintiff;

(2)     Overruling the Defendant's objections and its instructions not to answer;

(3)     Compelling the Defendant to answer without limitation;

(4)     Granting the Plaintiff leave to supplement any motion for class certification, motion for summary judgment or response to a motion by Defendant, limited to relevant information obtained from Defendant as a result of this motion to compel;

(5)     Awarding such other relief as the court deems just and proper including costs.

For the reasons explained more fully in the accompanying brief, the Plaintiff respectfully requests the relief of an Order compelling the Defendant to comply with its

discovery obligation in responding to Rule 30(b)(6) topics.

Respectfully submitted,

ALISHA KINGERY, on behalf of herself
and those similarly situated,

/s/ Leonard A. Bennett
Leonard A. Bennett, VSB #37523
Attorney for Plaintiffs
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 2d day of October, 2013, I will electronically file the
foregoing with the Clerk of Court using the CM/ECF system, which will then send a
notification of such filing (NEF) to the following:

John C. Lynch
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
John.lynch@troutmansanders.com

/s/ Leonard A. Bennett
Leonard A. Bennett, VSB #37523
Attorney for Plaintiffs
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com