# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

ALISHA KINGERY,

                Plaintiff,

v.                              CIVIL ACTION NO.  2:12-cv-01353

QUICKEN LOANS, INC.,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court are several motions to seal [Dockets 218, 228, 234, 240] filed by Quicken Loans, Inc. ("Quicken"). Two of Quicken's motions seek to seal or redact exhibits and memoranda filed in connection to its motion for summary judgment [Dockets 218, 234]. The other two relate to exhibits and memoranda filed in connection with Ms. Kingery's motion for class certification [Dockets 228, 240]. For the reasons discussed below, the motions are **DENIED.**

    **I.**    **Legal Standard**

Generally, "all documents filed for the Court's consideration in a civil case, even if not the subject of a judicial decision, are subject to presumptive access." *Walker Sys. v. Hubbell, Inc.*, 188 F.R.D. 428, 429 (S.D. W. Va. 1999). According to our Local Rules, public inspection of court documents "is necessary to allow interested parties to judge the court's work product in the cases assigned to it." Loc. R. Civ. P. 26.4(b)(1). As a result, "[t]he rule may be abrogated only in exceptional circumstances." *Id.*

Pursuant to Local Rule of Civil Procedure 26.4(b)(2), a motion to seal must be accompanied by a memorandum of law that contains:

> (A) the reasons why sealing is necessary, including the reasons why alternatives to sealing, such as redaction, are inadequate; (B) the requested duration of the proposed seal; and (C) a discussion of the propriety of sealing, giving due regard to the parameters of the common law and First Amendment rights of access as interpreted by the Supreme Court and our Court of Appeals.

Loc. R. Civ. P. 26.4(b)(2).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). The common law right affords presumptive access to all judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Stone*, 855 F.2d at 180. Materials that fall within the common law right may be sealed only if "countervailing interests heavily outweigh the public interests in access," and "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "[C]lass certification documents are judicial records subject to the common law right of access." *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 728 (M.D.N.C. 2013).

"In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Virginia Dep't of State Police*, 386 F.3d at 575 (quoting *Stone*, 855 F.2d at 180). Specifically, documents filed in connection with a summary judgment motion in a civil case fall within the First Amendment analysis. *Rushford*, 846 F.2d at 253. When discovery materials are used as "part of a dispositive motion, they los[e] their status as being 'raw fruits of discovery,' and that discovery, 'which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by

2

the court.'" *Virginia Dep't of State Police*, 386 F.3d at 576 (quoting *Rushford*, 846 F.2d at 252). The public's First Amendment right of access can be overcome only when "the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07 (1982); *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986); *Virginia Dep't of State Police*, 386 F.3d at 573. "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Virginia Dep't of State Police*, 386 F.3d at 575.

Whether the source arises from the First Amendment or the common law, it "may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182. In *Virginia Department of State Police*, the Fourth Circuit outlined the procedure I must follow in making a determination regarding sealing:

> When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first "must determine the source of the right of access with respect to each document," because "[o]nly then can it accurately weigh the competing interests at stake."
>
> A district court must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

386 F.3d at 576 (citations omitted). This framework also applies when a party seeks to redact a document, i.e., seal a document in part. *See United States v. Moussaoui*, 65 F. App'x 881, 889 (4th Cir. 2003).

## II. Discussion

As an initial matter, Quicken's four motions to seal were docketed on March 21, 2014, April 4, 2014, April 11, 2014, and April 17, 2014. Since these dates, the public has not objected to Quicken's motions. Accordingly, I find that the procedural requirements of sealing have been met. Because Quicken's interests in sealing or redacting exhibits would be insufficient under the common law or First Amendment standard, I find it unnecessary to distinguish between documents filed in connection with Quicken's motion for summary judgment and Ms. Kingery's motion for class certification.

In its motions, Quicken seeks to redact memoranda filed in support of Ms. Kingery's motion for class certification and her response to Quicken's motion for summary judgment. In addition, Quicken seeks to redact or seal exhibits filed in connection with its motion for summary judgment and Ms. Kingery's motion for class certification. This information falls into three categories: (1) exhibits containing or describing communications between Quicken and its counsel regarding its compliance with 15 U.S.C. § 1681g(g), (2) email correspondence, sworn testimony, and other materials discussing Quicken's interpretation of the statute, the procedures it would use to implement that interpretation, and the policy reasons underlying those procedures, and (3) sworn testimony and other documents describing the software Quicken uses to process loans and deliver credit disclosures. I discuss each category in turn.

### A. Communications Between Quicken and its Counsel Regarding Compliance with 15 U.S.C. § 1681g(g)

Quicken moves to seal exhibits that include or describe communications between Quicken and its counsel regarding its compliance with 15 U.S.C. § 1681g(g). Generally, communications between a party and its counsel are confidential because attorney-client privilege covers these

4

communications. However, as Quicken admits in its briefing, it "waived the attorney-client privilege on the narrow subject matter of its compliance efforts in 2004 for the limited purpose of this litigation[.]" (Mem. in Supp. of Mot. to Seal [Docket 241], at 5). Quicken does not offer any other reasons as to why its interest in sealing these communications overrides the public's common law and First Amendment right to access judicial records. Accordingly, I **DENY** Quicken's motion to seal with respect to this category of information.

### B. Exhibits Concerning Quicken's Interpretation of 15 U.S.C. § 1681g(g), the Procedures it Used to Implement that Interpretation, and the Rationale Supporting those Procedures

Quicken also seeks to seal exhibits that it contends are trade secrets. According to Quicken, these exhibits document Quicken's "internal efforts to comply with the new credit score disclosure requirement in § 1681g(g)." (Mem. in Supp. of Mot. to Seal [Docket 241], at 5). For example, Quicken argues that exhibits 4, 5, and 6, attached to Ms. Kingery's opposition to summary judgment, and exhibits 1, 2, and 3, attached to Ms. Kingery's motion for class certification, "contain internal discussions between Quicken Loans' compliance team and in-house counsel about Quicken Loans' procedures to provide credit score disclosures to consumers and its policy rationale behind these procedures, which are protectable trade secrets." (Mem. in Supp. of Mot. to Seal [Docket 241], at 5; Mem. in Supp. of Mot. to Seal [Docket 235], at 4-5). Quicken claims that it would be harmed by the disclosure of this information because competitors could adopt identical policies and procedures.

For several reasons, I find Quicken's arguments without merit. First, exhibits 2 and 4 focus on Quicken's speculation about what the statute means and what it requires. (*See* Ex. 2, Amy Bishop's 30(b)(6) Dep. Tr. [Docket 220-2]; Ex. 4, Email "Credit Score Notice" [Docket 230-4]).

5

Although trade secrets are defined broadly, "they must still be a 'formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors . . . .'" *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 122 (D. Md. 2009) (quoting 3 Jack B. Weinstein, *Weinstein's Federal Evidence* § 508.04 (2d ed. 2009)). This language "suggests that trade secrets are more than 'sensitive business information,' they are sophisticated, innovative methods or inventions that are the result of human creativity and ingenuity." *Id.* at 122-23. I can find no authority that suggests that a company's private interpretation of a statute is a trade secret.

Second, the other exhibits, 1, 3, 5, and 6, only discuss in general terms how Quicken would implement the disclosure requirement and its policy rationale for providing a disclosure at a particular time. (*See* Ex. 1, Email "VMP Compliance E-Letter 8-27-2004" [Docket 220-1]; Ex. 3, Email "New Form required by FTC for compliance with Fair and Accurate Credit Transactions Act" [Docket 220-3]; Ex. 5, Email "New Client Disclosure" [Docket 230-5]; Ex. 6, Email "New Client Disclosure" [Docket 230-6]). Even if such information constituted a trade secret, it is unlikely that a competitor could take this generic information and duplicate the procedures used by Quicken. Moreover, Quicken does not provide any evidence that suggests its fear of harm is warranted. *See Adjabeng v. GlaxoSmithKline, LLC*, No. 1:12-cv-568, 2014 WL 459851, at *3 (M.D.N.C. Feb. 5, 2014) ("In this case, it is not apparent from looking at the information that it is obviously confidential, nor is it obvious that disclosure would harm GSK. While GSK contends in its brief that its competitive and financial interests would be harmed by public disclosure of this information because intellectual property is core to its business and would be valuable to its competitors, there is no evidence supporting these contentions. Statements in a brief are not

evidence and are insufficient to justify a motion to seal, at least in the absence of a stipulation or joint representation by all parties which details the confidential nature of the information." (citations omitted)). Accordingly, I **DENY** Quicken's motion with respect to these exhibits.

### C. Exhibits Describing Software Quicken Uses to Process Loans and Deliver Credit Disclosure

Finally, Quicken seeks to seal certain exhibits that "describe Quicken Loans' proprietary software applications that Quicken Loans built to support lead development and loan origination." (Mem. in Supp. of Mot. to Seal [Docket 241], at 6). These exhibits include (1) sworn testimony that describe the functions, features, and programming logic of Quicken software and (2) screenshots of the Loan Origination and Lead Allocation's ("LOLA") interface and LOLA audit reports of Ms. Kingery's lead. Quicken argues its "proprietary software applications, and the programming logic behind these applications, are protectable trade secrets that should be sealed." (*Id.*). Quicken further claims that other companies could use this information to create competitive software and thus put Quicken at a competitive disadvantage.

The sworn testimony that Quicken seeks to seal contains only generalized descriptions of how a loan is processed through Quicken's software applications. It is unlikely that this testimony would divulge trade secrets. *See Zahran v. Trans Union Corp.*, No. 01-cv-1700, 2002 WL 31010822, at *3 (N.D. Ill. Sept. 9, 2002) (finding in FCRA action that the general description of how to "access consumer dispute history or similar screens" and "the function commands, keystrokes, data entry instructions, and general computer codes" in training manual was not trade secret information). Like the court in *Zahran*, I do not see "how a competitor will be advantaged if information relating to which keystrokes access which screens in the database is disclosed[.]" *Id.*

7

Moreover, Quicken's arguments are belied by its public filing of Kevin Lang's declaration, which describes Quicken's software applications in even more detail than the sworn testimony. (*See generally* Ex. G, Kevin Lang's Decl. [Docket 216-7]). As a result of this filing, the basic function of Quicken's software has been in the public record since Quicken filed its motion for summary judgment on March 21, 2014. "There is no compelling governmental interest in protecting information that is already public." *VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC*, No. JKB-11-1763, 2013 WL 1818681, at *2 (D. Md. Apr. 29, 2013). Finally, it is unlikely that a competitor, without LOLA's source code, could replicate LOLA based on the LOLA screenshots and reports. Accordingly, I **DENY** Quicken's motion to seal with respect to these exhibits.[1]

### III. Conclusion

For the reasons discussed above, Quicken's motions to seal [Dockets 218, 228, 234, 240] are **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 6, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[1] Quicken also argues that these documents and exhibits should be sealed because on two prior occasions the Magistrate Judge permitted the sealing of similar information. (*See* Order [Docket 181]; Order [Docket 182]). However, those orders are distinguishable because Quicken's motions were unopposed and the merits of the motions were not examined.

8